IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Case No. _____

| | | |
|---|---|---|
| NORTH AMERICAN SPECIALTY<br>INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>JOHN M. CAVES, JR.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **VERIFIED COMPLAINT**<br>**(Non-Jury)** |

Plaintiff, North American Specialty Insurance Company ("**NAS**"), complaining of Defendant John M. Caves, Jr., ("**Defendant**"), allege as follows:

## JURISDICTION AND VENUE

1.      NAS is a corporation organized and existing under the laws of the State of Missouri, and maintains its principal place of business in the State of Missouri.

2.      Upon information and belief, Defendant resides in Matthews, North Carolina.

3.      This Court has subject matter jurisdiction over this action and the parties to this action pursuant to 28 U.S.C. § 1332 as there is diversity among the parties and because the amount in controversy exceeds $75,000.00.

4.      Venue is proper in this district under 28 U.S.C. § 1391 because this is the district in which the Defendant resides and in which several of the bonded projects are located.

## GENERAL ALLEGATIONS

5.      NAS commences this action for damages and injunctive relief based upon Defendant's breach of the General Indemnity Agreement (the "**Indemnity Agreement**")

executed by Defendant in favor of NAS on January 16, 2018. Under the Indemnity Agreement, a true and correct copy of which is attached hereto as **Exhibit A**, Defendant is obligated to exonerate, hold harmless and indemnify NAS from and against any and all liability, loss, costs, damages, fees of attorneys and consultants, and other expenses, including interest, which NAS may sustain or incur by reason of, or in consequence of, the execution of surety bonds on behalf of Advance Development Concepts ("ADC").

6.      Defendant entered into the Indemnity Agreement for the explicit purpose of requesting NAS to "execute or procure the execution of surety bonds" on behalf of ADC. *See* Exhibit A at 1.

7.      Defendant "jointly and severally" agreed to the terms of the Indemnity Agreement. *Id.*

8.      Pursuant to Paragraph Two of the Indemnity Agreement, Defendant agreed, *inter alia*, to "exonerate, hold harmless and indemnify [NAS] from and against any and all Loss. For the purpose of this Agreement, Loss means any liability, loss, costs, damages, attorneys' fees, consultants' fees, and other expenses, including interest, which the Surety may sustain or incur by reason of, or in consequence of the Bond (or any renewals, continuations or extensions). Loss includes but is not limited to the following: (a) sums paid or liabilities incurred in the settlement of claims; (b) expenses paid or incurred in connection with the investigation of any claims; (c) sums paid in attempting to procure a release from liability; (d) expenses paid or incurred in the prosecution or defense of any suits; (e) any judgments under the Bonds; (f) expenses paid or incurred in enforcing the terms of this Agreement; (g) sums or expenses paid or liabilities incurred in the performance of any Bonded contract or related obligation; and (h) expenses paid in recovering or attempting to recover losses or expenses paid or incurred."

9.     Pursuant to Paragraph Four of the Indemnity Agreement, Defendant agreed he "shall be in default of this Agreement in the event of any of the following: (a) the Surety receives notice of a claim, breach or default under a Bonded contract; (b) the Surety receives a declaration of default or termination under a Bonded contract; (c) any breach or default in the performance of any Bonded contract; (d) abandonment, cessation or suspension of work under any Bonded contract; (e) the failure to diligently prosecute the work under any Bonded contract; (f) the failure to pay for labor or materials used in the prosecution of any Bonded contract; … (h) the failure to deposit collateral security with the Surety pursuant to Section 3 of this Agreement; or (i) the … bankruptcy of any Indemnitor … or if any action is taken by or against any Indemnitor under or by virtue of any Bankruptcy Act or Code ...".

10.     Pursuant to Paragraph 7 of the Indemnity Agreement, the entire contract price of any construction contract for which NAS has furnished a bond (hereinafter, a "**Bonded Contract**") shall be held in trust for the payment of obligations incurred in the performance of that Bonded Contract.  All money paid under such a Bonded Contract shall be held in trust for the benefit of NAS for any liability or loss it may have or sustain under any bond.

11.     Further, pursuant to the Indemnity Agreement, upon demand from NAS, Defendant is obligated to provide access to his books, records, and accounts at any time, and NAS may obtain a decree of specific performance in the event that the Defendant refuses to provide access to the books, records, and accounts.

12.     In addition, per the Indemnity Agreement, upon demand from NAS, Defendant is obligated to pay NAS an amount equal to the amount of a claim asserting liability or to the amount of a reserve established by NAS to cover any such claim.

3

13.     In reliance upon the rights conveyed by Defendant in the Indemnity Agreement executed by Defendant, NAS provided certain payment and performance bonds naming ADC as Principal (the "**ADC Bonds**").

14.     NAS has received claims on the ADC Bonds from general contractors, obligees, sub-subcontractors, suppliers.

15.     As of January 6, 2022, NAS has paid claims on the ADC Bonds, totaling $6,482,646.97.

16.     In addition to the amounts NAS has paid to resolve claims on the ADC Bonds as of January 6, 2022, NAS has paid costs, expenses, consulting fees and attorney fees in the total amount of $513,654.34.

17.     As of January 6, 2022, in total, NAS has paid losses, costs, expenses, consulting fees and attorney fees of $6,996,301.31.

18.     NAS will continue to incur additional losses, costs, expenses, consulting fees and attorney fees.

19.     In addition to the payments referenced above in Paragraph 15, Obligees for several of the Bonded Contracts have asserted performance bond claims under the Bonds.  NAS is investigating those performance bond claims.

20.     NAS has retained the undersigned counsel to prosecute this action and is obligated to pay counsel a reasonable fee.  Pursuant to Paragraph Two of the Indemnity Agreement, NAS is entitled to recover the attorneys' fees incurred in this matter.

21.     Per the attached April 7, 2020 letter, attached hereto as **Exhibit B**, NAS's counsel has advised Defendant of NAS's rights under the Indemnity Agreement and demanded that ADC protect all assets subject to those rights.

22.     Per the attached April 15, 2020 letter, attached hereto as **Exhibit C**, NAS's counsel demanded collateral security.

23.     To date Defendant has failed to indemnify NAS and has failed to provide collateral security to NAS.

### AS A FIRST CAUSE OF ACTION
### Breach of Contract (Indemnity Agreement)

24.     NAS incorporates the above paragraphs herein by reference as if stated verbatim.

25.     Pursuant to Paragraph Two of the Indemnity Agreement, Defendant agreed to indemnify, exonerate and hold NAS harmless from and against any and all liability, loss, costs, damages, fees of attorneys and consultants and other expenses, including interest, which NAS may sustain or incur by reason of, or in consequence of, the execution of the Bonds.

26.     NAS has incurred losses, damages and expenses because of having furnished bonds on behalf of ADC, and because of Defendant's failure to satisfy his obligations under the Indemnity Agreement, and NAS will continue to incur substantial losses, damages and expenses in an amount yet to be determined.

27.     NAS is entitled under the Indemnity Agreement to be indemnified and held harmless with respect to these losses, damages, claims and expenses, as well as a right to recover any losses, damages and expenses that NAS will incur or sustain in the future as a result of having furnished the Bonds or as a result of any failure of Defendant to discharge his obligations under the Indemnity Agreement.

28.     NAS is also entitled under the Indemnity Agreement to recover its attorneys' fees incurred in enforcing its rights under the Indemnity Agreement.

29.     As a result of Defendant's breach of the Indemnity Agreement, NAS has been damaged in an amount not yet determined.  NAS is entitled to recover those damages from

Defendant, along with prejudgment interest, costs and attorney's fees in an amount to be determined.

30. As of January 6, 2022, in total, NAS has paid losses, costs, expenses, consulting fees and attorney fees of $6,996,301.31.

31. To date, Defendant has failed to indemnify NAS and NAS has suffered damages of at least $6,996,301.31 as a result of this failure.

32. Defendant's failure to indemnify and reimburse NAS for its total losses, costs, expenses, consulting fees and attorney fees is a breach of contract entitling NAS to damages.

**AS A SECOND CAUSE OF ACTION**
**<u>Specific Performance of Collateral Security Provision</u>**

33. NAS incorporates the above paragraphs herein by reference as if stated verbatim.

34. By executing the Indemnity Agreement, the Defendant additionally agreed as follows:

<u>Collateral Security</u>: Upon demand of the Surety, the Indemnitors shall immediately deposit with the Surety a sum of money as collateral security on the Bonds. The surety's right to demand collateral security shall be triggered by any one of the following: (a) if it receives any notice of default, claim, or lawsuit asserting liability; (b) if it sets up a reserve to cover any investigation, demand, liability, claim asserted, suit or judgment under any of the Bonds; or (c) in the event there is a material change in the financial condition of any of the Indemnitors. The collateral security shall be equal to the liquidated amount stated in any claim or demand plus the amount that the Surety deems sufficient to cover the Surety's estimate of the costs and expenses to defend, investigate and adjust the claim or demand. If any claim or demand does not expressly state a specific amount, then the collateral payment to the Surety shall be in an amount the Surety deems sufficient to protect it from Loss related to the investigation, adjustment, payment and defense of the claim. Any collateral deposited as security on the Bonds shall be available in the sole discretion of the Surety against any Bonds within the scope of the Agreement or for any other indebtedness of the Indemnitors to the Surety. The Surety shall not be required to make any payment under the Bonds prior to demanding collateral security from the Indemnitors. (See Exhibit A at ¶3.)

35. NAS received claims related to the ADC Bonds.

6

36.     In reliance on the collateral security provision in the Indemnity Agreement, NAS made demand on Defendant for collateral security, as set forth in Exhibit C.

37.     Despite such demand, Defendant has failed to provide NAS with any collateral security or provide assurances that such collateral security would be paid.

38.     As of January 6, 2022, NAS has paid losses, costs, expenses, consulting fees and attorney fees of $6,996,301.31 as a result of having issued the ADC Bonds.

39.     As a result of the pending claims against the ADC Bonds and the anticipated costs, expenses, consulting fees and attorney fees NAS will incur as a result of having issued the ADC Bonds, NAS demands Defendant provide collateral security in the amount of $6,996,301.31.

40.     Pursuant to the Indemnity Agreement, Defendant is obligated to provide collateral security in the amount of $6,996,301.31, and this Court should specifically enforce such obligation.

## AS A THIRD CAUSE OF ACTION
### Quia Timet

41.     NAS incorporates the above paragraphs herein by reference as if stated verbatim.

42.     NAS anticipates and fears injuries and losses as a result of having issued surety bonds for ADC at the request of Defendant.

43.     Pursuant to the common law doctrine of *quia timet*, NAS, as surety, is entitled to funds from Defendant in an amount sufficient to protect NAS from anticipated damages, injuries and losses.

44.     Based on the claims received by NAS, NAS anticipates damages, injuries and losses in the amount of not less than $6,996,301.31 as a result of having issued surety bonds for ADC at the request of Defendant.

7

45.     Defendant, as indemnitor, is obligated to deposit funds with NAS to protect NAS from anticipated damages, injuries and losses.

**AS A FOURTH CAUSE OF ACTION**
**<u>Injunctive Relief</u>**

46.     NAS incorporates the above paragraphs herein by reference as if stated verbatim.

47.     Obligees, subcontractors and material suppliers have made claims on the ADC Bonds.  NAS has provided notice to the Defendant regarding these claims.  NAS has demanded collateral from the Defendant, pursuant to the terms of the Indemnity Agreement, sufficient to protect NAS from claims, losses and expenses associated with the ADC Bonds.

48.     Defendant has breached his obligations under the Indemnity Agreement by refusing to provide collateral sufficient to cover the claims, losses and expenses that have and will continue to be incurred by NAS.

49.     Based on the claims received by NAS, NAS has incurred damages, injuries and losses in the amount of not less than $6,996,301.31 as of January 6, 2022 as a result of having issued bonds for ADC at the request of Defendant.

50.     Upon information and belief, the Defendant is, or may be, in the process of listing real property for sale and of transferring assets, and ADC has already filed for bankruptcy. As a result, NAS justifiably believes it is without an adequate remedy at law and that it is likely to suffer immediate and irreparable harm if the Court does not grant NAS injunctive relief.

**PRAYER FOR RELIEF**

WHEREFORE, NAS prays that the Court:

1. Enter a judgment in favor of NAS on all claims in an amount of at least $6,996,301.31 plus interest, as well as any additional losses, costs, expenses, consulting fees and attorney fees paid by NAS after January 6, 2022, and require

Defendant to deposit cash collateral for same as specific enforcement of the collateral security provision of the Indemnity agreement or based on the common law principal of *quia timet*;

2. Order Defendant to immediately cease the process of transferring, listing for sale, disposing of or selling any assets of any type; and,

3. Award any other relief as the Court may deem just or proper.

Respectfully submitted, this the 7th day of February, 2022.


WOMBLE BOND DICKINSON (US) LLP

/s/ Patrick G. Spaugh
Patrick G. Spaugh (N.C. State Bar No. 49532)
One Wells Fargo Center, Suite 3500
301 South College Street
Charlotte, North Carolina 28202-6037
Telephone: (704) 331-4962
Facsimile: (704) 343-4869
Email: patrick.spaugh@wbd-us.com

*Counsel for Plaintiff North American Specialty Insurance Company*

9

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Case No. _____

NORTH AMERICAN SPECIALTY )
INSURANCE COMPANY, )
)
)
Plaintiff, )
)
v. )          **VERIFICATION OF**
)          **DOUGLAS COLVILLE**
JOHN M. CAVES, JR., )
)
Defendant. )
)
_____ )

Personally appeared before me, Douglas Colville, who, being first duly sworn, deposes and says as follows: I have read the foregoing Verified Complaint and know its contents. I declare that I am a Vice President of North American Specialty Insurance Company, and that the facts and allegations recited therein were assembled from my own knowledge and the knowledge of other employees of North American Specialty Insurance Company. Accordingly, while I do not have personal knowledge with respect to all facts and allegations, such information is true to the best of my knowledge, information, and belief, based on the exercise of reasonable diligence, and that such are hereby verified on behalf of North American Specialty Insurance Company. I am duly authorized to make this verification.

_____
DOUGLAS COLVILLE

SWORN to and subscribed before me
this the 27th day of January, 2022.

_____
Notary Public, State of Massachusetts
My Commission Expires: April 20th, 2023



JOSHUA ANDERSON
Notary Public
Commonwealth of Massachusetts
My Commission Expires April 20, 2023