UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:22-CV-00050-FDW-SCR

| | |
|---|---|
| NORTH AMERICAN SPECIALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>JOHN M. CAVES JR,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| COLE HAYES, CHAPTER 7 TRUSTEE FOR ADVANCED DEVELOPMENT CONCEPTS, LLC,<br><br>Plaintiff-Intervenor,<br><br>v.<br><br>NORTH AMERICAN SPECIALTY INSURANCE COMPANY and JOHN M. CAVES, JR.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**AMENDED ORDER**

**THIS MATTER** is before the Court on Plaintiff's Motion for Default Judgment (Doc. No. 14), against Defendant John M. Caves, Jr., and Plaintiff's Motion to Dismiss the Plaintiff-Intervenor's Complaint, (Doc. No. 36). For the reasons set forth below, Plaintiff's Motion for Default Judgment is **GRANTED in part** and **DENIED in part** and Plaintiff's Motion to Dismiss Plaintiff-Intervenor's Amended Complaint is **GRANTED**.[1]

**I.   BACKGROUND**

---

[1] This Order replaces the Court's prior order, (Doc. No. 42), to incorporate the appropriate accrued interest.

1

As incorporated below, the Court adopts the factual and procedural background as provided in the Magistrate Judge's Order granting Plaintiff-Intervenor's Motion to Intervene:

> On February 7, 2022, Plaintiff North American Specialty Insurance Company ("Plaintiff" or "NASIC") filed this action against Defendant John M. Caves, Jr. ("Defendant" or "Caves"). (Doc. No. 1). In short, the Complaint alleges that Defendant Caves breached a general indemnity agreement (the "Indemnity Agreement") that he executed in order for Plaintiff NASIC to execute or procure the execution of surety bonds on behalf of Advance Development Concepts, LLC ("ADC"), an entity owned by Caves. (Doc. No. 1 ¶¶ 5-6). Under the Indemnity Agreement, Defendant, and other indemnitors, agreed to jointly and severally, among other things "exonerate, hold harmless and indemnify the [Plaintiff NASIC] from and against any and all Loss." (Doc. No. 1-1 ¶ 2). In addition to Defendant Caves, both ADC and Carolinas Home and Land Investments Company ("CHLI"), entities owned by Defendant Caves, also signed the Indemnity Agreement as indemnitors. (Id. at 5-6). According to the Complaint, in reliance on the Indemnity Agreement, Plaintiff NASIC provided certain payment and performance bonds naming ADC as Principal (the "ADC Bonds"). (Doc. No. 1 ¶ 13). Afterwards, Plaintiff received various claims on the ADC Bonds for which Plaintiff paid at least $6,482,646.97, plus additional expenses and fees. (Id. ¶¶ 15-18). Plaintiff claims that it has not been indemnified. (Id. ¶ 23).
>
> Defendant Caves failed to answer or otherwise respond to the Complaint. Thereafter, the Clerk of Court entered default, and Plaintiff filed a motion for default judgment against Caves, which is currently pending. (Doc. Nos. 12 & 14). Plaintiff's motion for default judgment, among other things, requests that the Court order disbursement of funds ("Funds") that were deposited in and remain in the Court's registry, as discussed below, to satisfy a portion of any default judgment entered. (Doc. No. 14 ¶ 7). After Plaintiff filed its motion for default judgment, Proposed Plaintiff-Intervenor ADC Chapter 7 Trustee filed a limited objection to the extent the motion for default judgment requests an order disbursing such Funds to the Plaintiff. (Doc. No. 15). The ADC Chapter 7 Trustee also filed the Motion to Intervene claiming an interest in the Funds in the Court's registry, and seeking a declaratory judgment and release of such Funds to the ADC Chapter 7 Trustee. (Doc. Nos. 16 & 16-1).
>
> [T]he Court must also delve into the history of related cases and litigation in the Bankruptcy Court. As relevant here, prior to this action, in June 2020, CHLI, as noted an entity owned by Defendant Caves, filed a voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Western District of North Carolina, Bankruptcy Case No. 20-30619 (the "CHLI Bankruptcy Case"). (Doc. No. 16-1 ¶ 22; Doc. No. 16-2 ¶ 1). Plaintiff NASIC filed a proof of claim in the CHLI Bankruptcy Case for over $30 million based on the Indemnity Agreement. (Doc. No. 16-1 ¶ 23; Doc. No. 16-2 ¶¶ 4-6). Afterward, among other things, CHLI filed an adversary proceeding against Plaintiff NASIC to further litigate matters relating to Plaintiff NASIC's claim

against CHLI's bankruptcy estate (the "Adversary Proceeding"). (Doc. No. 16-1 ¶¶ 25-27; Doc. No. 16-2 ¶ 9). During the course of the Adversary Proceeding, Defendant filed this action against Defendant Caves. (Doc. No. 16-1 ¶ 27; Doc. No. 16-2 ¶ 14; Doc. No. 1). Ultimately, based on agreement of the parties in the Adversary Proceeding, the Bankruptcy Court found:

> The parties recognize [Plaintiff NASIC] is seeking recovery in the Lawsuit from Mr. Caves and that after payment of the other unsecured creditors and allowed administrative expense claims in the Debtor's bankruptcy case, Mr. Caves is the only party who would benefit from a finding that there was a fraudulent transfer rendering [Plaintiff NASIC's] claim unenforceable. Accordingly, it is best left to the District Court to determine whether Mr. Caves holds rights or defenses against [Plaintiff NASIC] or whether [Plaintiff NASIC] is entitled to recover from Mr. Caves any distribution he might receive as owner of the Debtor.

(Doc. No. 16-1 ¶ 27; Doc. No. 16-2 ¶ 15). In the same Order, the Bankruptcy Court approved a settlement agreement between CHLI and Plaintiff NASIC, with no objection by Defendant Caves, in which, among other things, CHLI agreed to pay in full all administrative claims and allowed general unsecured claims, except Plaintiff NASIC's claim, which was subordinated to all other allowed claims, and the remaining CHLI bankruptcy estate funds were to be placed in this Court's Registry Investment System as "Disputed Ownership Funds." (Doc. No. 16-1 ¶ 28; Doc. No. 16-2 ¶ 17); see also LCvR 67.1. CHLI and NASIC consented to dismissal of the Adversary Proceeding, but "all claims against the Debtor's estate shall be satisfied in full, provided that the claims, rights, and defenses of all parties to the Lawsuit are reserved without prejudice." (Doc. No. 16-2 ¶ 17). Accordingly, in June 2022, funds in the amount of $867,522.23 were deposited into the Court's Registry Investment System (the "Funds"). These are the Funds that Plaintiff NASIC requests the Court order disbursed to NASIC to partially satisfy any default judgment entered, and as discussed below, are also the Funds that the ADC Chapter 7 Trustee claims an interest in. (Doc. Nos. 14 & 15).

Contemporaneously with the above, on February 5, 2021, ADC filed a Chapter 7 bankruptcy petition in this District, case number 21-30060 (the "ADC Bankruptcy Case"). (Doc. No. 16-1 ¶ 24). Proposed Plaintiff-Intervenor is the Chapter 7 trustee in the ADC Bankruptcy Case. (Id. ¶ 1). In the ADC Bankruptcy Case, the ADC Chapter 7 Trustee claimed that Defendant Caves owed the bankruptcy estate at least $775,000. (Doc. No. 16-1 ¶ 29). In early 2023, to resolve such claims, the ADC Chapter 7 Trustee and Defendant Caves entered into a settlement agreement whereby Defendant Caves agreed to execute a confession of judgment in the amount of $685,000 in exchange for the ADC Chapter 7 Trustee agreeing not to execute on Defendant Cave's primary residence. (Id. ¶ 31). As a result, the Bankruptcy Court entered judgment in favor of the ADC Chapter 7 Trustee against Defendant. (Id.). On May 16, 2023, a Consent Charging Order "against the economic interest of Caves in [CHLI]" was entered in the Mecklenburg County Superior Court in the amount of $685,000, plus interest and fees and expenses.

> (Doc. No. 16-4; Doc. No. 16-1 ¶ 34). On May 26, 2023, the ADC Chapter 7 Trustee filed a UCC Financing Statement giving notice of the Consent Charging Order and his asserted lien rights to Defendant Caves' economic interest in CHLI. (Doc. No. 16-1 ¶ 36; Doc. No. 16-10).

(Doc. No. 26, p. 2–5.)

On October 19, 2023, the Magistrate Judge granted Plaintiff-Intervenor's Motion to Intervene. (Doc. No. 26). On November 2, 2023, Plaintiff-Intervenor filed a Complaint against Plaintiff NASIC and Defendant Caves. (Doc. No. 29.) Then, on November 8, 2023, Plaintiff-Intervenor filed an Amended Complaint. (Doc. No. 31.) On December 11, 2023, Plaintiff NASIC filed a Motion to Dismiss the Plaintiff-Intervenor's Amended Complaint for lack of jurisdiction and failure to state a claim. (Doc. No. 36.)

## II.    STANDARD OF REVIEW

### A.    Default Judgment

Federal Rule of Civil Procedure 55 governs the award of default judgment. In relevant part, it provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). The Fourth Circuit has "repeatedly expressed a strong preference that, as a general mater, defaults be avoided and that claims and defenses be disposed of on their merits." Colleton Preparatory Acad., Inc. v. Hoover Univ., Inc., 616 F.3d 413, 417 (4th Cir. 2010) (citations omitted). Nonetheless, default judgment "may be appropriate when the adversary process has been halted because of an essentially unresponsive party." SEC v. Lawbaugh, 359 F. Supp. 2d 418, 421 (D. Md. 2005). "If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, [the Court] . . . must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person." Fed. R. Civ. P. 55(b)(1).

4

**B.     Motion to Dismiss**

"The United States Courts are courts of specifically limited jurisdiction and may exercise only that jurisdiction which Congress has prescribed." Chris v. Tenet, 221 F.3d 648, 655 (4th Cir. 2000) (citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)); Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir. 1999)). Before a court can rule on any other issue, "questions of subject matter jurisdiction must be decided first, because they concern the court's very power to hear the case." Owens-Illinois, Inc. v. Meade, 186 F.3d 435, 442 n.4 (4th Cir. 1999) (internal quotation marks omitted). If there is doubt whether such jurisdiction exists, the court must "raise lack of subject-matter jurisdiction on its own motion," without regard to the parties' positions. Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982); see also Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010) (noting federal courts are independently obligated to determine whether subject matter jurisdiction exists, "even when no party challenges it"); Mansfield, Coldwater & Lake Mich. Ry. v. Swan, 111 U.S. 379, 382 (1884).

Thus, it is well-settled that lack of subject matter jurisdiction may be raised at any time by a litigant or the court *sua sponte*. See, e.g., id. at 384.  Finally, "[n]o party can waive the defect, or consent to [subject matter] jurisdiction. No court can ignore the defect; rather a court, noticing the defect, must raise the matter on its own." Wis. Dept. of Corrs. v. Schacht, 524 U.S. 381, 389 (1998) (internal citations omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 671 (2009) ("Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt.").

### III.     DISCUSSION

**A.     Default Judgment**

Having considered Plaintiff NASIC's Motion for Final Default Judgment and its supporting exhibits, including the Affidavit of Douglas Colville, the Court determines that:

5

- Defendant Caves was served with all pleadings in this matter;

- The Court has personal jurisdiction and subject matter jurisdiction;

- Defendant Caves is not under disability and has failed to plead and appear in the time allowed under law;

- Default has been entered against Defendant Caves;

- Defendant Caves owes Plaintiff NASIC the sum of $6,996,301.31, plus post-judgment interest at the applicable rate under 28 U.S.C. § 1961; and

- Pursuant to FED. R. CIV. P. 54(b), there is no just reason to delay the entry of a final judgment in favor of Plaintiff North American Specialty Insurance Company and against Defendant John M. Caves, Jr.

In light of the foregoing, the Court hereby **GRANTS IN PART AND DENIES IN PART** Plaintiff NASIC's Motion for Final Default Judgment. The Court will address the ownership of the funds deposited in this case in the analysis of the Motion to Dismiss below.

**B.     Motion to Dismiss**

Plaintiff NASIC argues Plaintiff-Intervenor's Amended Complaint must be dismissed for lack of standing and failure to state a claim upon which relief can be granted. Specifically, Plaintiff NASIC contends "[Plaintiff-Intervenor's] claim for a declaratory judgment became moot when the Court entered default against Caves." (Doc. No. 37, p. 10.) For the reasons stated below, Plaintiff NASIC's Motion to Dismiss Plaintiff-Intervenor's Amended Complaint is GRANTED.

Under the Declaratory Judgment Act ("DJA"), a district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought," so long as the case is a "case of actual controversy within its jurisdiction." 28 U.S.C. § 2201(a). The DJA is purely remedial and does not create jurisdiction or substantive

6

Case 3:22-cv-00050-FDW-SCR     Document 44     Filed 03/28/24     Page 6 of 9

rights. See CGM, LLC v. Bell South Telecommunications, Inc, 664 F.3d 46, 55–56 (4th Cir. 2011); Lotz Realty Co., Inc. v. HUD, 717 F.2d 929, 932 (4th Cir. 1983). Thus, "[a] request for declaratory relief is barred to the same extent that the claim for substantive relief on which it is based would be barred." CGM, 664 F.3d at 55–56 (quotation omitted). A district court may issue a declaratory judgment where it has subject-matter jurisdiction and two other conditions are satisfied: (1) "the dispute must be a 'case or controversy' within the confines of Article III" and (2) the "court, in its discretion, must be satisfied that declaratory relief is appropriate." White v. Nat'l Union Fire Ins. Co. of Pittsburgh, 913 F.2d 165, 167 (4th Cir. 1990); see Trustgard Ins. Co. v. Collins, 942 F.3d 195, 201 (4th Cir. 2019).

Importantly, to have standing to seek a declaratory judgment, a plaintiff "must establish an ongoing or future injury in fact." Kenny v. Wilson, 885 F.3d 80, 287 (4th Cir. 2018). "[E]ven when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement, [the United States Supreme Court] has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Warth v. Seldin, 422 U.S. 490, 499 (1975) (citing Tileston v. Ullman, 318 U.S. 44 (1943); United States v. Raines, 362 U.S. 17 (1960)). "When a case or controversy ceases to exist—either due to a change in the facts or the law—the litigation is moot, and the court's subject matter jurisdiction ceases to exist also." Porter v. Clarke, 852 F.3d 358, 363 (4th Cir. 2017) (quotation omitted).

Through Plaintiff-Intervenor's Amended Complaint, Plaintiff-Intervenor asserts an entitlement to a declaration "avoiding the Indemnity Agreement as to CHLI"; invalidating "NASIC's security interest in the Disputed Ownership Funds" as to CHLI, Defendant Caves, and third parties; and denying Defendant Caves made "any transfer to NASIC, actual or constructive, with the clear intent to part at the time of the assignment with his interest in CHLI." (Doc. No. 31,

7

p. 12–14.) It is undisputed Plaintiff-Intervenor has a "lien on and security interest in [Defendant Caves'] economic interest in [CHLI]" resulting from a charging order. (Doc. No. 31-9, p. 8.) At earliest, Plaintiff-Intervenor's interest became effective on May 15, 2023, the date the Superior Court of North Carolina in Mecklenburg County signed the charging order. (Doc. No. 31-9, p. 8–9.) However, "the judgment creditor has only the right to receive the distributions that otherwise would be paid to the interest owner with respect to the economic interest." N.C. GEN. STAT. § 57-D-5-03(a).

Here, the Clerk of Court entered default against Defendant Caves on February 23, 2023.[2] (Doc. No. 12.) As a result, all factual allegations in the Amended Complaint are taken as true. Defendant Caves lost his right to defend himself against Plaintiff NASIC's well-plead claims, including contesting the validity of the Indemnity Agreement. Consequently, the Court finds Defendant Caves breached the Indemnity Agreement. The Charging Order does not provide Plaintiff-Intervenor the right to assert any legal rights or interests on Defendant Caves' behalf. Defendant Caves lost his right to a distribution from the Funds upon default. Any attempt by Plaintiff-Intervenor to invalidate the Indemnity Agreement on behalf of Defendant Caves, or even CHLI, is unavailing. Because Plaintiff-Intervenor's economic interest in CHLI derives expressly from Defendant Caves' interest, Defendant Caves' default is detrimental to any claim Plaintiff-Intervenor asserts as to the Funds. Accordingly, Plaintiff-Intervenor does not have standing and the Court dismisses Plaintiff-Intervenor's claims for lack of subject matter jurisdiction.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Default Judgement as to Defendant John M. Caves Jr., (Doc. No. 14), is GRANTED IN PART, as to Plaintiff NASIC recovering from Defendant Caves the sum of $6,996,301.31, plus post-judgment interest under 28

---

[2] At the time of default, the Court notes Plaintiff-Intervenor had not yet obtained the charging order giving an economic interest in Defendant's economic interest in CHLI.

U.S.C. § 1961 until paid; and DENIED IN PART WITHOUT PREJUDICE, as to the disbursement of the net estate funds deposited with this Court pursuant to the Bankruptcy Order in Case 20-30619.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Dismiss Plaintiff-Intervenor's Amended Complaint, (Doc. No. 36), is GRANTED. Plaintiff-Intervenor's Amended Complaint, (Doc. No. 31), is DISMISSED. The net estate funds in the amount of $867,522.23 deposited with this Court pursuant to the Bankruptcy Order in Case 20-30619 shall be disbursed to North American Specialty Insurance Company, plus any accrued interest.

**IT IS SO ORDERED.**

Signed: March 25, 2024

_____
Frank D. Whitney
United States District Judge